**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>STEVEN QUADREL, *et al.*,<br><br>                  Defendants. | Civil Action No: 19-12235 (SDW) (LDW)<br><br>**AMENDED WHEREAS OPINION**<br><br>December 8, 2023 |

**WIGENTON**, District Judge.

      **THIS MATTER** having come before this Court upon Defendants Ryan Quadrel ("Ryan") and Chris Quadrel ("Chris," together with Ryan, "Moving Defendants") filing of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (D.E. 36 ("Motion")), and this Court having considered the Moving Defendants' unopposed submission; and

      **WHEREAS** summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). The moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who

"must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). If the nonmoving party fails to oppose the motion for summary judgment, that "is not tantamount to a default judgment"; "the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021); and

**WHEREAS** this case arises from the death of Mark Quadrel ("Decedent") and the distribution of the death benefit from his life insurance policy. The gruesome circumstances surrounding Decedent's death are undisputed. On October 24, 2018, Decedent visited his son, Defendant Steven Quadrel ("Steven"), at Steven's apartment in Norristown, Pennsylvania. (D.E. 36-1 ¶ 6.) At some point, Steven left his apartment to retrieve a pistol from his truck. (*Id.*) Shortly thereafter, he returned to his apartment, loaded the pistol, and shot Decedent 23 times in the back and the back of the head. (*Id.*) While shooting Decedent, Steven reloaded the pistol multiple times. (*Id.*) Ultimately, Decedent died. (*Id.*) The cause of death listed on his death certificate is gunshot wounds to the head and torso, and the manner of death listed is homicide. (*Id.*) Steven was arrested and charged with first-degree murder of Decedent in Pennsylvania. (*Id.* ¶ 8.) He eventually pled guilty to third-degree murder, aggravated assault of a victim less than 13 years old[1], and possession of an instrument of a crime. (*Id.* ¶ 22); and

**WHEREAS** at the time of his death, Decedent was insured for term life insurance benefits under interpleader Plaintiff Prudential Insurance Company's ("Prudential") Group Plan Life Insurance Contract Number G-14800 (the "Policy"). (*Id.* ¶ 12.) The total death benefit under the

---

[1] After shooting Decedent, Steven left his apartment and shot at a 12-year-old boy who was riding a scooter, striking the boy's hand. (*Id.* ¶ 7.)

Policy is $566,989.50. (*Id.* ¶ 15.) Decedent is survived by three children—Steven, Ryan, and Chris (*id.* ¶¶ 1, 4)—and they are designated as equal beneficiaries under the Policy (*id.* ¶¶ 15–16). Prudential paid Ryan and Chris their respective one-third shares of the total death benefit, but then filed the interpleader complaint regarding the remaining death benefit. (*Id.* ¶¶ 17–18.) According to the interpleader complaint, because Steven killed Decedent, he may be disqualified from receiving his one-third share of the total death benefit and, thus, his interests are adverse to those of Ryan, Chris, and Decedent's Estate. (D.E. 1 ¶ 20.) On July 26, 2019, Prudential moved for default judgment against Steven, which this Court granted on August 19, 2019. (D.E. 10, 12.) Now that Steven has pled guilty to, among other crimes, third-degree murder of Decedent, the Moving Defendants ask this Court to enter an order holding that, pursuant to New Jersey's Slayer Statute, Steven is not entitled to the remaining death benefit, and that Ryan and Chris are entitled to receive it in equal shares. (D.E. 36-2 at 5); and

**WHEREAS** New Jersey's Slayer Statute provides that an individual who intentionally kills the decedent "forfeits all benefits . . . with respect to the decedent's estate, including an intestate share . . . . If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed his share." N.J. Stat. Ann. § 3B:7-1.1. "A final judgment of conviction establishing responsibility for the intentional killing of the decedent is conclusive for purposes of this chapter." N.J. Stat. Ann. § 3B:7-6. However, "[i]n the absence of such a conviction the court may determine by a preponderance of evidence whether the individual was responsible for the intentional killing of the decedent for purposes of this chapter." *Id.*; and

**WHEREAS** the undisputed facts establish that Steven intentionally killed Decedent. As indicated earlier in this opinion, Steven has pled guilty to third-degree murder of Decedent, which means that he committed an intentional act *with or without* the intent to kill Decedent.

*Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) (holding that third-degree murder "is an intentional act, characterized by malice, that results in death, intended or not"). While that plea is not conclusive as to Steven's intentional killing of Decedent, the undisputed facts are—before shooting Decedent, Steven went to his car to retrieve his pistol; Steven then returned to his apartment and loaded the pistol; he then shot Decedent 23 times in the back and back of his head, pausing multiple times to reload the pistol. This Court is satisfied that no reasonable trier of fact could find that Steven unintentionally killed Decedent. Consequently, Steven's one-third share in Decedent's Policy passes as if Steven disclaimed his share, N.J. Stat. Ann. § 3B:7-1.1, and thus, it will be distributed evenly to Ryan and Chris (D.E. 36-1 ¶ 14); therefore

The Moving Defendants' Motion is **GRANTED**. An appropriate order follows.

                                        /s/ Susan D. Wigenton
                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.